IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 267-880-9598, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310260160582055, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | Case No. ___26-mj-1466_____ |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, George Cintron, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 267-880-9598, with International Mobile Subscriber Identity/Electronic Serial Number 310260160582055 ("the SUBJECT PHONE"), that is stored at premises controlled by US Cellular, now under T-Mobile, US Inc. ("T-Mobile"), a wireless telephone service provider headquartered at Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

1

2.      I am a special agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"). I have been employed by HSI since March 9, 2025, and I am currently assigned to HSI's field office in Philadelphia, Pennsylvania. My responsibilities include investigating violations of federal criminal law, including criminal offenses under Title 18 of the United States Code. I have completed and received training from April 2025 to October 2025 at the Federal Law Enforcement Training Center ("FLETC"). Prior to my tenure as an HSI Special Agent, I was employed by the Philadelphia Police Department from October 13, 2015, to March 7, 2025. I have received and completed training from the Philadelphia Police Training Academy, and I earned a bachelor's degree in criminal justice from John Jay College of Criminal Justice in June 2014. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of federal laws have been committed. This application will establish probable cause that a violation of 18 U.S.C. § 1361 – depredation against government property has been committed by Pablo SEHUANCATZI-Rojas. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of this criminal violation, the identity of the person who committed this criminal violation, and locations used to commit this offense.

2

## PROBABLE CAUSE

5.      Under 18 U.S.C. § 1361, "[w]hoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows: If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both."

## STATEMENT OF FACTS

6.      On November 16, 2025, Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE-ERO") Deportation Officer ("DO") Edward Morgan was seeking to conduct an administrative arrest of a target for an immigration violation with the assistance of Drug Enforcement Administration ("DEA") Special Agents (SA) Kevin Duffy and Corey Koch, and Internal Revenue Service Criminal Investigation SA Nicholas Becht and Jake Shelton. The targeted enforcement operation was taking place at 2500 Knights Road, Building 146, Bensalem, PA 19020, and the target was Pablo SEHUANCATZI-Rojas.

7.      SEHUANCATZI-Rojas (A# 214175426, DOB: 4/20/1991), hereinafter "SEHUANCATZI," a Mexican national with no legal status in the United States, entered the United States without inspection on an unknown date and unknown place. ICE learned that SEHUANCATZI was illegally present in the United States and subject to violations under the Immigration and Nationality Act ("INA"), as a result of his arrest by Bensalem Police Department for driving under the influence on October 25, 2025. At the time of his arrest,

3

SEHUANCATZI provided his cellular telephone number, 267-880-9598, the SUBJECT TELEPHONE, to Bensalem Police when he was processed for arrest.

8.      On November 16, 2025, at approximately 8:20 a.m., surveilling agents positively identified SEHUANCATZI from his 2025 Bensalem arrest booking photograph, as he alone left Building 146 located at 2500 Knight Rd., in Bensalem, PA 19020, and entered a silver Chevrolet Silverado pickup truck, bearing New Jersey License Plate J69-WBN. This vehicle was registered to SEHUANCATZI and he was alone in the truck. Once SEHUANCATZI entered his truck, SA Becht and SA Duffy activated their police lights while using their government owned vehicles and blocked him into his parking spot by placing their vehicles directly in front of SEHUANCATZI's truck. SA Becht parked his vehicle, a blue Hyundai Santa Fe, at an angle in front of the SEHUANCATZI's truck with his driver's side door facing the driver's side front of SEHUANCATZI's truck. SA Duffy parked his silver Nissan Altima sedan by the passenger side front of SEHUANCATZI's truck. SA Koch parked his government vehicle perpendicular to and behind SEHUANCATZI's truck with a small grassy median between his vehicle and the rear of SEHUANCATZI's truck. DO Morgan arrived within a minute afterwards and parked his government vehicle to the passenger side rear of the vehicle, just beyond the grassy median. SAs Koch and Becht were standing outside SEHUANCATZI's truck  driver's side window giving commands in English to SEHUANCATZE to put the window down and get out of the vehicle, but SEHUANCATZI remained in the truck. SA Duffy was standing to the front passenger side of SEHUANCATZI's truck. SEHUANCATZI's truck's side windows were heavily tinted and the agents could not see if SEHUANCATZI was armed. The agents were wearing tactical gear bearing insignia (including badges for the two IRS agents present) and the word "Police" that identified them as law enforcement officers.

9.      After DO Morgan arrived, SA Koch again instructed SEHUANCATZI to lower his windows and warned SEHUANCATZI (in English) that he would break them if he did not comply with his orders. DO Morgan also ordered SEHUANCATZI (in English) to lower his windows and get out of his vehicle. Shortly afterwards, SA Koch broke the driver's side window of SEHUANCATZI's truck and DO Morgan then attempted to break the passenger side window with a glass breaking tool but was unable to do so. Immediately afterwards, the SEHUANCATZI's truck accelerated forward and drove into the government vehicles' blocking its path, causing thousands of dollars in  damage to both vehicles.

10.     Once SEHUANCATZI pushed the government vehicles out of the way, he drove his truck out of the parking lot and fled the area. The agents did not pursue SEHUANCATZI. DO Morgan then reported the incident to the Bensalem Police Department.

11.     In December 2025, HSI SA Kaley Mooney and I interviewed the law enforcement agents and officers involved in the incident. Additionally, we reviewed the body worn camera footage provided by DO Morgan, as well all documentation provided by the agents and officers which provided their account of the incident, photographs and reports detailing the damage to the government vehicles.

12.     On May 26, 2026, a grand jury in the Eastern District of Pennsylvania returned an indictment charging SEHUANCATZI with one count of depredation of government property, in violation of 18 U.S.C. § 1361, under case number 26-CR-236-1.

13.     On or about the same date, an arrest warrant was issued for SEHUANCATZI.

14.     On June 3, 2026, I queried the SEHUANCATZI's vehicle through an automated license plate reader ("ALPR") system. The results showed that the SEHUANCATZI's truck frequented the area in and around Bristol Pennsylvania. Specifically, SEHUANCATZI's truck

5

frequented the intersection of Veteran's Highway and Bristol Pike in Bucks County, Pennsylvania during the early morning hours (approximately 3:30 a.m.) and again during the evening (between 4:00 p.m. and 8:00 p.m.).

15.     On June 11, 2026, HSI agents set up a mobile surveillance at the intersection of Veteran's Highway and Bristol Pike to follow SEHUANCATZI's truck . At 3:30 a.m., agents observed SEHUANCATZI's truck enter the intersection and travel north on Bristol Pike but terminated surveillance shortly afterwards.

16.     On June 11, 2026, I observed SEHUANCATZI's truck traveling southbound on Bristol Pike towards the intersection of Bristol Pike and Veteran's Highway. I followed the vehicle to a residence located at 1415 Mile St, Bristol, Pennsylvania but I was unable to verify if SEHUANCATZI was operating the vehicle.

17.     On June 15, 2026, at approximately 9:00 p.m., I and another HSI agent observed SEHUANCATZI's truck  parked unoccupied at 1415 Mile Street, Bristol, Pennsylvania.

18.     On June 12, 2026, HSI issued an administrative subpoena to T-Mobile, which is the identified service provider for the Subject Phone. T-Mobile records indicated that the Subject Phone was activated on April 10, 2021, under the customer name Pablo SEHUANCATZI-Rojas, with a birthdate of April 20, 1991. The service and billing address is listed as 2517 Dunksferry Rd., Apt. L204, Bensalem, PA.

19.     In the early morning of July 1, 2026, HSI agents with local police arrived at 1415 Mile St., Bristol, Pennsylvania for the purpose of arresting SEHUANCATZI. At approximately 3:30 a.m., SEHUANCATZI left the residence at that location and walked towards his pickup truck. HSI agents intercepted SEHUANCATZI and attempted to apprehend him but he broke free of the grip of one of the agents and ran back inside the residence, where he immediately

6

barricaded himself inside it. Agents who followed SEHUANCATZI to the doorway were unable to force entry because SEHUANCATZI used his body to keep the doorway shut. Other agents gained entry through another doorway in the house and apprehended SEHUANCATZI inside near the doorway where he had entered moments before.

20.     I believe that the evidence identified and sought in Attachment B will establish that the SUBJECT PHONE belonging to SEHUANCATZI was located in the aforementioned areas at the aforementioned times when federal law enforcement was attempting to apprehend him.

21.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

22.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-Mobile

typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23.    Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## **AUTHORIZATION REQUEST**

24.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.      I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

 s/ *George Cintron*
George Cintron
Special Agent, HIS

Subscribed and sworn to before me by telephone on July ___30___, 2026

_____
HON. PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 267-880-9598 (the "Subject Phone"), with International Mobile Subscriber Identity/Electronic Serial Number 310260160582055, that are stored at premises controlled by T-Mobile ("T-Mobile"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

1

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period November 14, 2025 to November 18, 2025, and from June 30, 2026 through July 2, 2026:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

3

## II.       Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §1361 – depredation against government property, involving Pablo SEHUANCATZI-Rojas, for the time period November 14, 2025 to November 18, 2025, and from June 30, 2026 through July 2, 2026.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC
RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by T-Mobile, and my title is

_____.  I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of T-

Mobile. The attached records consist of _____ [GENERALLY DESCRIBE

RECORDS (pages/CDs/megabytes)]. I further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of T-Mobile, and they were made by T-Mobile as a regular practice; and

b.      such records were generated by T-Mobile electronic process or system that

produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the

original records; and

2.      the process or system is regularly verified by T-Mobile, and at all times

pertinent to the records certified here the process and system functioned properly and normally.

1

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date    Signature